*Rutland,*
*January,*
*1827.*

WHEELER MARTIN *vs.* DANIEL BIGELOW.

The prior erection of a mill upon a stream, and the appropriation of its waters to the use of such mill, do not give to the proprietor thereof the exclusive use of the water, unobstructed by the subsequent erection of other mills above, on the same stream. And although he may be somewhat damnified thereby, it is *damnum absque injuria,* provided the stream be not diverted, nor the waters wantonly wasted by the works above.

The common law, as it is understood to be settled in *England,* is not applicable to the local situation and circumstances of this state, in this particular, and therefore not adopted.

THIS cause came before the court, on a motion by the plaintiff for a new trial, founded on exceptions taken at the trial in

Rutland,
January,
1827.

Martin
vs.
Bigelow.

the county court, and which were certified to this court as fol-
fows :

Action of trespass *quare clausum fregit.*

On the trial of the cause, the plaintiff having shown in evi-
dence a title to the premises and possession thereof at the time
of the supposed trespass, and that the defendant entered there-
on, and split out and removed the waste gate to the plaintiff's
dam.

The defendant proceeded to prove, that he was the proprie-
tor, and in possession of premises lying and being situated be-
low, and upon the same stream of water upon which the plain-
tiff's mill above was located, and that he was the owner, and
then in the possession and use of a saw-mill standing thereon,
which saw-mill and its appurtenances had been used and im-
proved by the defendant, and those under whom he claimed,
for several years prior to the erection of the plaintiff's dam and
mill above, and that the defendant was prevented from using
the water in so advantageous a manner as formerly, at his said
mill, and was damnified by reason of the plaintiff's erecting the
dam above, and thereby obstructing the water; and the break-
ing up of the plaintiff's waste gate was for the purpose of giving
the said stream of water its natural course to the defendant's
mill, &c. No evidence was given tending to show, that the
plaintiff had wantonly wasted or obstructed the water.

The court decided, and so instructed the jury, that if the de-
fendant had erected his mill and dam, and was in the use and
improvement thereof before the plaintiff had commenced the
building of his, and that the defendant had sustained damage
by reason of the plaintiff's obstructing the water, the plaintiff
was not entitled to recover damages of the defendant for remo-
ving the gate of the plaintiff, whereby the water was so ob-
structed. To which opinion of the court, the plaintiff except-
ed, &c.

*Royce,* for the plaintiff, in support of the motion. The mere
prior occupancy of a stream does not give such a right as will
exclude an owner on the stream, above, from the use of the
stream.

The owners of land upon a stream have a right to the use of
the water, in its natural course, for the ordinary purposes of life.
But this right is a common, and equal right in all, and is viola-
ted only by a diversion or a wanton or unreasonable obstruc-
tion.----*Weston* vs. *Alden,* 8 *Mass.* 136.----*Palmer* vs. *Mulligan,* 3
*Caines* 309.----*Platt* vs. *Johnson,* 15 *Johns. Rep.* 213.----*Merritt* vs.
*Benckerhoff,* 17 *do.* 306.----*Howard* vs. *Mason,* 1 *Root's Rep.* 537.

A further or greater right, which restricts the owner above
from using the waters, may be acquired by grant, or by such en-
joyment as creates a presumption of a grant. But there is nei-
ther in this case.

*Kellogg* and *Langdon,* contra. Two questions are presented
by the exceptions. 1. Did the prior erection of the defend-
ant's mill give to him a right to the waters of the stream, unob-

*Rutland,*
*January,*
*1827.*

Martin
*vs.*
Bigelow.

structed by subsequent erections by proprietors of land on the same stream above? 2. Could he lawfully enter upon the plaintiff's land, and remove the obstruction?

1. The origin of property, or an exclusive right of enjoyment, is *occupancy.* This occupancy may be of a two-fold nature, to wit : where the thing claimed is tangible, and may be reduced to actual possession, and the other where the thing is not tangible, and therefore cannot be reduced to actual possession, but is capable of use and enjoyment for some of the necessary purposes of life, as the use of the light, or a stream of water.

Every person owning land through which a stream of water runs, by the common law, and (as the defendant contends,) by the laws of this and our sister states, has a right to the free and uninterrupted use of the water, in its natural flow and course, without diminution, or diversion, to irrigate his land, water his cattle, and for other common uses of life, or to work any machinery erected thereon. And if any person on the stream above, diverts or permanently obstructs such flow of the water, so as to injure the machinery erected below, before such obstructions or diversions were made, an action on the case will lie for redress of the injury.----2 *Blac. Com.* 14.----*Hammond's N. P.* 199, 200.----1 *Wils. Rep.* 174, *Brown* vs. *Best.*----6 *East's Rep.* 208, *Bealy* vs. *Shaw.*----1 *Swift's Dig.* 111.----*Conn. Rep.* 590, *Ingraham* vs. *Hutchinson.*----2 *Selw. N. P.* 1089, Note (3).----9 *Com. Law Rep.* 269, *Williams* vs. *Morland.*

2. Admitting such a right exists and is vested in the first occupant of a stream of water; and that right is infringed upon and injury done to the first occupant by one who subsequently enlarges his occupation or use of the water, or places any obstructions to the natural flow of the water, which operates as an injury to the first occupant below, the person injured may enter upon the premises in a peaceable manner, and remove such obstructions as a nuisance, so as to give the stream of water its former free course, whenever it is necessary to work the machinery first built below. Whatever unlawfully annoys or does damage to one, or the publick, is a nuisance. (3 *Blac. Com.* 5.) And it may be taken away or removed by the party injured, so as he commits no riot in doing it, and does not unreasonably go beyond what is necessary to restore him to the full enjoyment of the right injured.-- -3 *Blac. Com.* 5.----9 *Coke's Rep.* 53, *Baten's case.*----2 *Salk.* 459, *Rex* vs. *Rosevelt.*----*Hammond's N. P.* 171.----4 *Jac. Law Dic.* 420.----*Cro. Car.* 184.----*Archibald's Pleadings*, 16.

HUTCHINSON J. pronounced the following opinion.

It appears by the case, that the defendant erected his mill before the plaintiff erected his, but it does not appear how long before; nothing shows it to have been fifteen years before. And the case negatives any wanton waste or obstruction on the part of the plaintiff.

*Rutland,*.
January
1827.

Martin
*vs.*
Bigelow.

The decision of the county court which we now review, presents this question, merely, whether the defendant's having first appropriated the water of the stream to the use of his mill, entitled him to the water without such obstruction as was created by the plaintiff's use of the water at his mill? No objection is raised to the method used by the defendant to assert his right, if his right be as he contends for.

The common law of England seems to be, that each land owner, through whose land a stream of water flows, has a right to the water in its natural course, and any diversion of the same to his injury, gives him a right of action. He must have previously appropriated it to some use, before he can be said to sustain any damage. If this common law is to govern, it supports the defendant in his defence. But the Court consider it not applicable to our circumstances, and not of binding force here. There must have been a time when it was not applicable, so as to do justice in all cases, in England. Should this principle be adopted here, its effect would be to let the man who should first erect mills upon a small river or brook, control the whole and defeat all the mill privileges from his mills to the source.

I, for one, should like to see some old case in point; some case in which the injury complained of was merely the prudent use of the water, with machinery proportioned to the stream; after which use it flows down its natural channel.

Not only the interest of those who own water privileges, but of the surrounding inhabitants, seems to require that mills should be erected in suitable different places on the same stream. The cases cited at the bar seem all to be either diversions of the water out of its channel, or such obstructions, as effect a visible if not a wanton waste. At least none of them are like the present case, which negatives any imprudent use or wanton waste of the water. The case of *Platt* vs. *Johnson*, 15th of *Johns. Rep.* 213, noted on the plaintiff's brief, but not produced at the hearing, is found, upon the reading, to be full in point, in favour of the plaintiff upon the question now submitted.

Questions relating to water privileges, of great importance to our citizens, must arise and be decided; and this court are disposed to be careful not to anticipate them before they come properly before the court; and while we are ready to decide, in this case, that the mere prior occupancy of the water by the defendant does not give him a right to prevent the plaintiff from using the same water in a prudent way, as it flows down its channel, we wish it fully understood, that we give no intimation what our opinion would have been, had the defendant proved an occupancy of the water for his mills, more than fifteen years before the plaintiff erected his.

SKINNER, Ch. J. As I presided at the trial in the county court, it may be proper that I make some remarks. I should have preferred at that time, that the whole case should have

*Rutland,*
*January,*
*1827.*

*Martin*
*vs:*
*Bigelow.*

come up, but the counsel chose to put the case on the present ground. Sitting as I did, I chose to give to the jury the rule of the common law. But I then thought, as I now do, that we are authorized by the statute adopting the common law, to say how far it is applicable to our circumstances. I perfectly concur in the opinion now given.

PRENTISS and ROYCE, *Justices,* also concurred.

New trial granted.

*Moses Strong, R. C. Royce,* and *S. S. Phelps,* for the plaintiff.

*C. Langdon* and *John Kellogg,* for the defendant.